UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO ROBERTSON,

    Plaintiff,

                                            Case No. 09-cv-14675

v.

                                            Paul D. Borman
                                            United States District Judge

KENNETH T. McKEE,

                                            Paul J. Komives
    Defendant.                            United States Magistrate Judge

_____/


**OPINION AND ORDER (1) DENYING PETITIONER'S OBJECTIONS (Dkt. No. 17);
(2) ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION (Dkt. No. 16);
(3) DENYING THE APPLICATION FOR WRIT OF HABEAS CORPUS; and
<u>(4) DENYING THE CERTIFICATE OF APPEALABILITY</u>**

On December 1, 2006, Antonio Robertson ("Petitioner") was convicted following a jury trial in Macomb County Circuit Court of torture (Mich. Comp. Laws § 750.85), kidnaping (Mich. Comp. Laws § 750.349), assault with intent to do great bodily harm less than murder (Mich. Comp. Laws § 750.84), and conspiracy to torture (Mich. Comp. Laws §§ 750.157a, 750.85). On December 1, 2009, Petitioner filed a Writ of Habeas Corpus with this Court. (Dkt. No. 1.)

The Magistrate Judge filed a Report and Recommendation ("R&R") recommending that the Court deny the petition on June 20, 2011. (Dkt. No. 16.) Petitioner filed Objections to the R&R on July 5, 2011. (Dkt. No. 17.)

For the reasons stated below, the Court will:

(1) Deny Petitioner's Objections;

(2) Adopt the Magistrate Judge's Report and Recommendation;

(3) Deny the Application for Writ of Habeas Corpus; and

(4) Deny the Certificate of Appealability.

## I. BACKGROUND

The Court adopts the facts as summarized in the Magistrate Judge's Report and Recommendation at 4-7.

## II. ANALYSIS

### A. Admission of Photographs

Petitioner objects to the admission at his trial of photographs of the victim's injuries. Petitioner asserts that the photographs were "gruesome, inflammatory, [and] emotionally charged[.]" (Pet.'s Obj. 1.)

"Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (quoting *Brown v. O'Dea*, 277 F.3d 642, 645 (6th Cir. 2000)). *See also Frazier v. Huffman*, 343 F.3d 780, 789-98 (6th Cir. 2003) (holding that state court's admission of photographs of victim's corpse during a murder trial was not an unreasonable application of federal law and did not warrant habeas relief, because the photographs were used to illustrate the coroner's testimony and the nature of the encounter that preceded the victim's death.).

The photographs in this case were used to illustrate the victim's injuries, which was a

2

relevant aspect of the charged crime of torture. *See* Mich. Comp. Laws §§ 750.85(1) and (2)(c)(ii) (defining torture to as inflicting "great bodily injury," and defining "great bodily injury" as "serious burns or scalding, severe cuts, or multiple puncture wounds."). The admission of the photographs was thus highly relevant to the government's case, and did not "so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly*, 25 F.3d at 370.

**B. *Res Gestae* Witness**

Petitioner also argues that he was entitled to an instruction that the prosecution failed to produce a *res gestae* witness named Roger Brodowski.

Under Michigan law, "[a] prosecutor who endorses a witness under M.C.L. § 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *People v. Eccles*, 260 Mich. App. 379, 388 (2004). If the prosecutor fails to produce an endorsed witness, and the trial court finds that the prosecutor failed to exercise due diligence in locating the witness, "the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id.*

The Michigan Court of Appeals found as follows regarding this claim:

> Detective Daniel Klik testified at a due diligence hearing that Brodowski had been evicted from his residence two days after the incident. Klik located a second address for Brodowski, who was apparently renting a home, and attempted to serve him with a subpoena on three separate occassions, but Brodowski was never present at the home. Klik talked to Brodowski's neighbors, who were unaware of his location, but informed Klik that the primary renter of the home was Michael Cristini, who had been evicted. Brodowski, who left no forwarding address, was last seen on September 15, 2006, approximately two-and-a-half months before trial commenced. Klik also utilized the assistance of Lieutenant Glen Brymer and his staff,

3

> who were also fruitless in their search for Brodowski. The trial court did not abuse its discretion in determining the prosecutor exercised due diligence.

*People v. Robertson*, No. 276092, 2008 WL 2779899, *2 (Mich. Ct. App. Jul. 17, 2008) (unpublished).

To the extent Petitioner's argument is based on state law, it does not permit this Court to grant the requested habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Petitioner does cite *United States v. Hayes*, 218 F.3d 615 (6th Cir. 2000), where the appellant argued that his rights under the Sixth Amendment's confrontation clause were violated when the district court limited his cross examination of a witness at trial. *Id.* at 619. However, "[t]he Sixth Amendment right of confrontation does not impose upon the government the duty to call a particular witness." *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972). Accordingly, Petitioner cannot claim his Sixth Amendment right was violated by the prosecution's failure to produce a particular witness.[1] *See United States v. Heck*, 499 F.2d 778, 789 n. 9 (9th Cir. 1974) (noting that "[a] defendant has no right to confront a 'witness' who provides no evidence at trial.") (citation omitted). The Court thus declines to grant habeas relief based on the prosecution's failure to produce Brodowski at trial.

### C. Prosecutorial Misconduct

Petitioner argues that the prosecutor improperly stated during his opening statement that

---

[1] The Court notes that Petitioner has not alleged, nor is there any argument suggesting, that Brodowski would provide exculpatory evidence favorable to Petitioner. *See Bryant*, 461 F.2d at 916 (noting that "there are situations where the Government, as a matter of due process, is required to call a witness who the Government has reason to believe will give exculpatory testimony.").

4

Davis "had his throat cut." (Pet.'s Obj. 2.) Petitioner asserts that the prosecutor's remark is not supported by the evidence presented during the preliminary examination, where Davis testified that someone "went across" his throat with a knife. (Nov. 28, 2006 Trial Tr. 53-54.) "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted).

In *Frazier v. Cupp*, 394 U.S. 731 (1969), the petitioner argued that he was unfairly prejudiced when the prosecutor, during his opening statement, referred to a statement he expected to elicit from a coconspirator at trial. When the coconspirator was called, however, he asserted his privilege against self-incrimination and was dismissed. The petitioner argued "that this series of events placed the substance of [the coconspirator's] statement before the jury in a way that may well have been the equivalent in the jury's mind of testimony[.]" *Id.* at 734 (citation omitted).

The Supreme Court disagreed, noting that the jury had been told that opening statements should not be considered evidence: "We believe that in these circumstances the limiting instructions given were sufficient to protect petitioner's constitutional rights." *Id.* at 735. The Court further stated:

> Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. . . . At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence so objectively and dispassionately.

5

*Id.* at 736 (citation and internal quotation marks omitted).

In the instant case, prior to the opening statements, the trial court properly instructed the jury that the opening statements were not evidence. (Nov. 28, 2006 Trial Tr. 4.) Accordingly, the Court finds that, like in *Frazier*, that the variance between the evidence described during the prosecutor's opening statement and the evidence actually presented did not "so infect the trial as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

### D. Jury Oath

Petitioner contends that he was denied a fair trial because the trial court did not administer an oath to prospective jurors prior to voir dire. *See* Mich. Ct. R. 6.412(B) (providing that a trial court must have potential jurors sworn "[b]efore beginning the jury selection process[.]"). Petitioner argues that the trial court's failure denied his ability to effectively use his peremptory challenges.

As noted *supra*, Petitioner's claims do not warrant habeas relief to the extent they rely on violations of state procedural laws. *Estelle*, 502 U.S. at 67-68.

Petitioner has also failed to cite any federal authority or case law providing habeas relief where a trial court fails to administer an oath to prospective jurors. Petitioner cites three United States Supreme Court cases, all of which are distinguishable from the instant matter.

In *Taylor v. Kentucky*, 436 U.S. 478 (1978), the Court held that the trial court's refusal to grant the defendant's timely request to instruct the jury on the presumption of innocence violated the defendant's right to a fair trial. *Id.* at 490. However, this holding was limited to the facts of the case. *See Kentucky v. Whorton*, 441 U.S. 786, 789 (1979) (noting that the holding in *Taylor* "was expressly limited to the facts[.]"). Moreover, *Taylor* says nothing about a trial court's failure to administer an oath to prospective jurors prior to voir dire.

6

The Supreme Court discussed peremptory challenges in *United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (holding that Fed. R. Civ. P. 24(b) "is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause"), and *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 616 (1991) (holding that using peremptory challenges to exclude jurors based on their race violates equal protection). However, neither case presents a basis for granting habeas relief on the grounds that the trial court failed to administer an oath to prospective jurors.

Accordingly, Petitioner has failed to show that the federal Constitution is violated where the trial court fails to swear a prospective jury pool prior to voir dire. Petitioner is therefore not entitled to habeas relief on this claim.

**E. Habitual Offender Sentence**

Petitioner argues that he is entitled to habeas relief because the trial court amended his original sentencing to reflect that he was a habitual offender. In addressing this argument, the Michigan Court of Appeals stated as follows:

> Several facts indicate that the omission of [Petitioner]'s status as a habitual offender from the first Judgment of Sentence was a clerical error. Primarily, the trial court sentenced defendant to 5 to 15 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction. This sentence could only have resulted had the court first concluded that [Petitioner] was a second habitual offender. A habitual offender notice was filed with the court before trial, and the Presentence Investigative Report classified defendant as a second habitual offender and recommended that he be sentenced accordingly.

*Robertson*, 2008 WL 2779899 at *4.

The Court also notes that the trial court did not alter the actual term of Petitioner's

7

imprisonment when it reclassified him as a habitual offender. There was therefore no real conflict between the oral sentence as pronounced by the trial court and the written Judgment of Sentence. *See United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir. 1988) (noting that "when an oral sentence conflicts with the written sentence, the oral sentence controls.").

Habeas relief is only available to prisoners "who claim a right to be released from custody . . . ." *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995). Petitioner's claim, however, is based on mere clerical error, which has no Constitutional basis for a right to be released. Accordingly, the Court finds that no Constitutional violation occurred when the trial court corrected a clerical mistake by amending Petitioner's Judgment of Sentence to reflect that Petitioner is a habitual offender. *See Partee v. Stegall*, 8 Fed. Appx. 466, 467 (6th Cir. 2001) (holding that petitioner was not entitled to habeas relief when he was tried, convicted, and sentenced for first-degree murder, but clerical error in trial court's mittimus cited statute governing second-degree murder).

### F. Cumulative Error

Petitioner's final argument asserts that the cumulative prejudicial effect of all the claimed errors warrants habeas relief. However, as noted *supra*, Petitioner has not demonstrated that any Constitutional errors occurred. Moreover, even if there had been some error by the state courts, "'not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). Petitioner thus fails to state a basis for habeas relief.

### G. Certificate of Appealability

Having considered the Petitioner's Application for a Writ of Habeas Corpus, the Court finds

that Petitioner has failed to demonstrate any issue "that reasonable jurists could debate[.]" *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). Accordingly, pursuant to section 2253 of the Antiterrorism and Effective Death Penalty Act, the Court concludes that Petitioner is not entitled to a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).

### III. CONCLUSION

For the reasons stated above, the Court will

(1) **DENY** Petitioner's Objections;

(2) **ADOPT** the Magistrate Judge's Report and Recommendation;

(3) **DENY** the Application for Writ of Habeas Corpus;

(4) **DENY** a Certificate of Appealability.

**IT IS SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 1-30-12